FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 16, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDA MCLEAN, as Administrator of the Estate of LEROY JERRED, deceased,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 2:23-cv-00300-SAB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 39. Plaintiff is represented by James Dore, Jr. Defendant is represented by Michael Mitchell. The motion was considered without oral argument.

Having reviewed the briefs, caselaw, and First Amended Complaint, the Court **denies** Defendant's motion.

### I. BACKGROUND

This case was filed in the U.S. District Court for the Eastern District of Washington on October 19, 2023. Plaintiff, as administrator of the Estate of Leroy Jerred, brings a single claim for wrongful death in the case of Mr. Jerred, asserting violations under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 1**

The violation is pursuant to the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. § 5301, *et seq.*, and a Public Law 93-638 contract between the Colville Tribal Correctional Facility ("Correctional Facility") in Nespelem, Washington, and the Bureau of Indian Affairs ("BIA"). Plaintiff specifically alleges a violation of BIA's Adult Detention Facility ("ADF") standards, including: 2A-21, 4C-01, 4C-03, 4C-06, 4C-08, 4C-10, 4D-03, 4D-04, 4D-05, 4D-08, 4D-16, 6A-01, and 6A-06. The following comes from Plaintiff's First Amended Complaint, ECF No. 33.

On November 15, 2021, Mr. Jerred died of respiratory failure caused by a stroke. Plaintiff alleges the incidents that led to his deteriorated health condition and subsequent death began during his incarceration in January 2021 at the Colville Tribal Correctional Facility.

On July 5, 2019, Mr. Jerred was charged with Disobedience of a Lawful Court Order because he was alleged to have violated an order to stay more than 200 feet away from the property of his ex-wife's house. The house adjoined his own property, which had a driveway within 200 feet of his ex-wife's house. This caused confusion about whether Mr. Jerred could access his driveway without violating the order.

On December 21, 2020, the court issued a warrant for Mr. Jerred's arrest for failure to appear at a Show Cause Hearing related to several pretrial release violations. Mr. Jerred turned himself into the Colville Tribal Court and then the Correctional Facility on January 14, 2021.

At the time of his incarceration, Mr. Jerred was 79 years old and suffered from medical conditions including diabetes, pinched nerves, and metastatic urothelial cancer. He used a walker, wheelchair, and other means to walk and conduct his daily activities. He explained these conditions to the Correctional Facility staff, but he was not allowed to keep his walker in his cell because staff considered it a weapon. Plaintiff alleges the jail staff failed to conduct a health

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** ~ 2

assessment, risk assessment, medical screening, or obtain a medical note regarding Mr. Jerred's ability to be placed in a holding cell.

Plaintiff claims Mr. Jerred was required to walk around the jail without the aid of his walker or a wheelchair, sometimes distances longer than 24 feet to reach a bathroom. He shuffled unsteadily due to his conditions and pain. Each time he needed to eat or respond to the staff, he had to get himself off his cell mattress without support. Plaintiff also claims jail staff expressed concern about keeping Mr. Jerred in the jail due to his condition and the ongoing COVID-19 pandemic. Mr. Jerred requested to talk with the commander about his cell conditions, but Plaintiff alleges the commander never arrived.

On January 20, 2021, Plaintiff alleges Mr. Jerred told officers he was sick, in pain, and wanted to see a doctor, but the commander again did not come.

On January 21, 2021, Plaintiff alleges Mr. Jerred fell in his cell and could not get himself up. He yelled for help, but no one came, and he eventually pulled himself up on a bench. He reported pain when the officers came by, but he was not medically assessed. At his video arraignment hearing that day, he informed the judge about his fall, but the Correctional Facility commander assured the judge that staff could handle Mr. Jerred's medical condition. He remained in jail because he could not afford bail. Plaintiff alleges at dinner that day, he again complained of pain and requested a doctor, but none was provided. He continued to experience pain and difficulty eating in the following days.

On January 23, 2021, Plaintiff alleges Mr. Jerred again fell while returning from a call with his daughter but had no assistance from a walker or jail staff to get up. It further alleges a corrections officer later discovered him on the floor unable to get up because of pain. Tribal EMS was called, and Mr. Jerred was transported to the Coulee Medical Center for care. Doctor Barry Bacon conducted an exam and diagnosed Mr. Jerred with severe lumbar stenosis and recommended he see a neurosurgeon. Dr. Bacon also recommended Mr. Jerred be released from jail

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 3**

pending surgery, given his condition. He was returned to the Correctional Facility and his cell, again without his walker or support for walking. He continued to complain of pain and dizziness and requested his walker and to see the commander.

Dr. Bacon faxed the Correctional Facility on January 28, 2021, with concern about Mr. Jerred's condition. Plaintiff alleges the Correctional Facility staff took no action regarding the fax.

On January 30, 2021, Plaintiff alleges Mr. Jerred again suffered a fall and requested medical attention. Plaintiff alleges no medical screening or assessment was performed.

On January 31, 2021, Plaintiff alleges Mr. Jerred fell again while trying to go to the bathroom and was knocked unconscious for some time. Plaintiff claims two Correctional Facility staff kicked Mr. Jerred when they found him, and he told them he could not stand. Tribal EMS came, and he was Life Flighted to Sacred Heart Hospital in Spokane, Washington. The doctor informed him his neck was fractured in two places, and he underwent surgery. A week after surgery, he was discharged to St. Luke's Rehab for a week, and then was allowed to return home. Following surgery, he continued to have multiple seizures a day until his death in November 2021. Plaintiff claims the events at the Correctional Facility led to Mr. Jerred's wrongful death.

Mr. Jerred was deposed before his death regarding the incidents in the jail, including the January 31, 2021, fall and alleged kicking incident. In the July 22, 2021, deposition, he stated:

> [The officers] said, Come on, Leroy, you SOB. You can get up. And they started kicking me.
>
> And that's when they broke my neck, and I was out like a light, and I didn't remember nothing after that until I got to Spokane. I didn't know I had a broken neck. I didn't know I was alive.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 4**

> […]
>
> I'd asked when I [was] going to get some help, some assistance, with staying alive. You know, I said I couldn't walk. I was supposed to have a walker. I was supposed to have a doctor's appointment.
>
> Not one doctor looked at me or anything until I fell, and they took me to Grand Coulee. Not one.

Jerred Dep. at 47–51, ECF No. 39–1.

On November 14, 2021, following months of health decline, Mr. Jerred suffered a stroke. On November 15, 2021, he died of respiratory failure caused by the stroke.

On September 16, 2021, and before his death, Mr. Jerred, through counsel, filed a Standard Form 95 for the FTCA asserting claims against the Department of Interior for his injuries while incarcerated. The administrative process continued after his death, and the Department of Interior denied Mr. Jerred's claim on April 11, 2022.

On October 14, 2022, Linda McLean filed a second Standard Form 95 with the Department of Interior in her role as Administrator of Mr. Jerred's Estate. The claim was again denied on May 2, 2023. Ms. McLean then filed the Complaint in this matter on October 19, 2023, within the required six-month window to pursue a claim.

The Correctional Facility operates under the ISDEAA and a Public Law 93-638 contract awarded and maintained by BIA, which both Plaintiff and Defendant acknowledge in briefing. The Correctional Facility, under its 638 Contract, is required to follow the BIA Office Justice Services, Division of Operation Correction Handbook regarding facility management. Plaintiff alleges the Adult Detention Program at the Correctional Facility must adhere to the ADF guidelines, which require the facility provide inmates with necessary qualified, certified, and

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** ~ 5

licensed personnel; equipment; supplies, and training and materials to perform services in accordance with the 638 Contract. Protecting life and property and providing a safe, secure, and humane detention service are guiding principles.

Plaintiff alleges the Correctional Facility failed to follow BIA standards by not providing Mr. Jerred with assistance when walking, which created a fall risk and resulted in numerous actual falls, a broken neck, and seizures contributing to his ultimate stroke and death.

Plaintiff seeks damages in the form of general damages including the loss of chance of survival and for the injuries leading up his death; and special damages for funeral and medical expenses related to the harm.

## II.    MOTION STANDARD

Fed. R. Civ. P. 12(b)(1) allows for dismissal of an action for "lack of subject-matter jurisdiction," and a federal court must establish subject-matter jurisdiction to hear a case. *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 92 (2017). Plaintiff bears the burden of proving the existence of such jurisdiction when considering a Rule 12(b)(1) motion. *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). The presumption in federal court is no jurisdiction unless otherwise proven. *See Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981). At any point if the court finds it lacks subject matter jurisdiction, it must dismiss the case. Fed. R. Civ. P. 12(h)(3).

A subject-matter jurisdiction challenge is either facial—the allegations are insufficient on their face—or factual—the facts of the allegations that give rise to jurisdiction are disputed. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A facial challenge requires the court to assess whether the allegations in the complaint are legally sufficient to invoke the court's jurisdiction. *See Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020). A factual challenge, and subsequent review, "is not restricted to the face of the pleadings;" a district court "may review any evidence, such as affidavits and testimony, to resolve factual

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** ~ 6

disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

A court need not convert a motion to summary judgment for the purposes of resolving factual disputes on jurisdiction in an FTCA claim. *See Land v. Dollar*, 330 U.S. 731, 735 (1947).

### III.    DEFENDANT'S MOTION TO DISMISS

**A.    Legal Standard**

The federal government enjoys immunity from suit, *see F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994), except in cases like the FTCA where it has waived sovereign immunity under a *respondeat superior* theory, *see Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir. 1996). District courts have jurisdiction to review FTCA cases, specifically for torts, alleging a specific act by an identifiable employee. *See* 28 U.S.C. § 1346(b)(1); *see also F.D.I.C.*, 510 U.S. at 477.

FTCA jurisdictional coverage under Section 1346(b) is limited by exceptions, including those outlined in 28 U.S.C. § 2680(h):

> The provisions of this chapter and section 1346(b) of this title shall not apply to —
>
> […]
>
> (h)    Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 7**

In 1975, the United States enacted the ISDEAA, which allowed tribes to take over programs operated by BIA through Public Law 93-638 contracts, or "638 Contracts." *See Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1033 (9th Cir. 2013). In 1990, the U.S. Congress extended the FTCA waiver to claims "resulting from the performance of functions […] under a contract, grant agreement, or cooperative agreement," as authorized by the ISDEAA. *See Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1003 (9th Cir. 2014) (quoting 25 U.S.C. § 450f (note: *Claims Resulting From Performance of Contract, Grant Agreement, or Cooperative Agreement [. . .]*)).[1] This provision is known as Section 314, which is outlined in the U.S. Department of Interior and Related Agencies Appropriation Act of 1990, though the extension is limited:

> [A]n Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs [. . .] while carrying out any such contract or agreement and its employees are deemed employees of the Bureau [. . .] while acting within the scope of their employment in carrying out the contract or agreement.

*Dep't of Interior & Related Agencies Appropriation Act*, Pub. L. 101–512, § 314 (1990).

The Ninth Circuit follows a two-step analysis for determining whether an alleged action of a tribal employee falls under Section 314, making the United States liable under a tort theory pursuant to the FTCA. *See Shirk*, 773 F.3d at 1003. A court must: (1) "determine whether the alleged activity is, in fact, encompassed by the relevant [ISDEAA] federal contract or agreement"; and (2) "decide whether the allegedly tortious action falls within the scope of the tortfeasor's employment under state law." *Id.* at 1006. If both prongs are met, then the actions are covered by the FTCA.

---

[1] *Shirk*, similar to this case, involved the actions of tribal law enforcement officers.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** ~ 8

B.  Analysis

Plaintiff satisfied the presentment requirement in 28 U.S.C. § 2675(a) for FTCA claims. The Court now moves to Defendant's Rule 12(b)(1) challenge.

In its Motion, Defendant brings a facial challenge attacking the legal sufficiency of Plaintiff's First Amended Complaint to invoke the Court's jurisdiction. It argues the Correctional Facility officers involved in Mr. Jerred's care were not acting under the authority of the BIA when the alleged assault and battery occurred on January 31, 2021, and therefore, this claim is barred by Section 2680(h).

However, Plaintiff is targeting the practices of the Correctional Facility and its officers for wrongful death related to standards of care and management as required by its BIA 638 Contract, not just the one incident on January 31, 2021. Therefore, Section 2680(h) is inapplicable.

The Court now turns to the *Shirk* two-step test to determine whether FTCA liability extends to Plaintiff's claims. *See Shirk*, 773 F.3d at 1006.

First, the management and care of inmates is encompassed by the contract between BIA and the Colville Tribal Correctional Facility because, as Defendant notes, the Colville Tribe entered into such a contract with the U.S. Department of Interior to administer services at the jail that otherwise would be administered by the federal government. Defendant acknowledges in its Motion that under the 1990 ISDEAA Amendment, tribal employees acting within the scope of their employment in carrying out the contract are covered by FTCA liability. Thus, the first prong is satisfied.

Second, Plaintiff alleges the tribal officers' actions and facility management led to the wrongful death of Mr. Jerred. It claims he received improper care and treatment while in the custody in violation of BIA standards. Wash. Rev. Code § 51.08.013 defines acting in the course of employment as "acting at his or her employer's direction or in the furtherance of his or her employer's business." *See*

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** ~ 9

also *Wilson v. Horton's Towing*, 906 F.3d 773, 783 (9th Cir. 2018) (citing *Ball-Foster Glass Container Co. v. Giovanelli*, 163 Wash. 2d 133, 160 (2008)). Without ruling on the merits or facts of the claim, the Court finds these allegations fall within the scope of the tribal officers' employment at the Correctional Facility and under Washington State law.

On its face, Plaintiff's First Amended Complaint alleges legally sufficient claims to invoke the Court's jurisdiction. *See Salter*, 974 F.3d at 964. Further, Plaintiff has satisfied its burden to show the Court has jurisdiction to adjudicate its FTCA claim. *See Thompson*, 99 F.3d at 353.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 39, is **DENIED**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 16th day of April 2025.

Stanley A. Bastian
Chief United States District Judge

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 10**